## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| LABORERS' PENSION FUND and | ) | |
| LABORERS' WELFARE FUND OF THE | ) | |
| HEALTH AND WELFARE DEPARTMENT | ) | |
| OF THE CONSTRUCTION AND GENERAL | ) | |
| LABORERS' DISTRICT COUNCIL OF | ) | |
| CHICAGO AND VICINITY, THE CHICAGO | ) | |
| LABORERS' DISTRICT COUNCIL RETIREE | ) | 18 C 7037 |
| HEALTH AND WELFARE FUND, and | ) | |
| CATHERINE WENSKUS, Administrator of the | ) | |
| Funds, | ) | |
| Plaintiffs, | ) | |
| v. | ) | |
| RIVER ALLIANCE, Inc., an Illinois | ) | |
| corporation, | ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiffs, Laborers' Pension Fund and Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity, the Chicago Laborers' District Council Retiree Health and Welfare Fund and Catherine Wenskus, Administrator of the Funds, (collectively "Funds") by their attorneys, Patrick T. Wallace, Amy Carollo, Ryan Liska, and Kate Mosenson, for their Complaint against Defendant River Alliance, Inc., an Illinois corporation state:

## COUNT I

### (Failure To Pay Benefit Contributions)

1.      Jurisdiction is based on Sections 502(e)(1) and (2) and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§1132 (e)(1) and (2) and 1145, Section 301(a) of the Labor Management Relations Act ("LMRA") of 1947 as amended, 29 U.S.C. §185(a), 28 U.S.C. §1331, and federal common law.

2.      Venue is proper pursuant to Section 502(e)(2) of ERISA, 29 U.S.C. §1132(e)(2), and 28 U.S.C. §1391 (a) and (b).

3.      The Funds are multiemployer benefit plans within the meanings of Sections 3(3) and 3(37) of ERISA. 29 U.S.C. §1002(3) and 37(A). They are established and maintained pursuant to their respective Agreements and Declarations of Trust in accordance with Section 302(c)(5) of the LMRA. 29 U.S.C. § 186(c)(5). The Funds have offices and conduct business within this District.

4.      Plaintiff Catherine Wenskus ("Wenskus") is the Administrator of the Funds, and has been duly authorized by the Funds' Trustees to act on behalf of the Funds in the collection of employer contributions owed to the Funds and to the Construction and General District Council of Chicago and Vicinity Training Fund, and with respect to the collection by the Funds of amounts which have been or are required to be withheld from the wages of employees in payment of Union dues for transmittal to the Construction and General Laborers' District Council of Chicago and Vicinity (the "Union"). With respect to such matters, Wenskus is a fiduciary of the Funds within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. §1002(21)(A).

5.      Defendant River Alliance (hereinafter the "Company") is an Illinois corporation. The Company does business within this District and is an employer within the meaning of Section 3(5) of ERISA, 29 U.S.C. §1002(5), and Section 301(a) of the LMRA, 29 U.S.C. §185(c).

6.      The Union is a labor organization within the meaning of 29 U.S.C. §185(a). The Union and the Company are parties to a collective bargaining agreement, the most recent of which became effective June 1, 2017 ("Agreement"). At all times relevant herein, the employees

2

of the Company performed work covered by the same Agreement. (A copy of the "short form" Agreement entered into between the Union and the Company which Agreement adopts and incorporates a Master Agreement between the Union and various employer associations, and also binds the Company to the Funds' respective Agreements and Declarations of Trust and the Agreements and Declarations of Trusts of the various Funds listed in paragraph 7 below, is attached hereto as Exhibit A.)

7.　　The Funds have been duly authorized by the Construction and General Laborers' District Council of Chicago and Vicinity Training Fund (the "Training Fund"), the Midwest Construction Industry Advancement Fund ("MCIAF"), the Chicagoland Construction Safety Council (the "Safety Fund"), the Laborers' Employers' Cooperation and Education Trust ("LECET"), the Concrete Contractors' Association of Greater Chicago ("CCA"), the CDCNI/CAWCC Contractors' Industry Advancement Fund (the "Wall & Ceiling Fund"), the CISCO Uniform Drug/Alcohol Abuse Program ("CISCO"), the Laborers' District Council Labor Management Committee Cooperative ("LDCLMCC"), the CARCO Industry Advancement Fund ("CARCO"), and the Illinois Small Pavers' Association ("ISPA") to act as an agent in the collection of contributions due to those Funds.

8.　　The Agreement and the Funds' respective Agreements and Declarations of Trust obligate the Company to make contributions on behalf of its employees covered by the Agreement for pension benefits, health and welfare benefits, and/or benefits for the Training Fund and to submit monthly remittance reports in which the Company, *inter alia*, identifies the employees covered under the Agreement and the amount of contributions to be remitted to the Funds on behalf of each covered employee.  Pursuant to the terms of the Agreement and the

3

Funds' respective Agreements and Declarations of Trust, contributions which are not submitted in a timely fashion are assessed liquidated damages plus interest.

9.      The Agreement and the Funds' respective Agreements and Declarations of Trust require the Company to submit its books and records to the Funds on demand for an audit to determine benefit contribution compliance.

10.     The Agreement requires the Company to obtain and maintain a surety bond to guaranty the payment of future wages, pension and welfare benefits.

11.     Notwithstanding the obligations imposed by the Agreement and the Funds' respective Agreements and Declarations of Trust, the Company has performed covered work during the months of August 2018 forward and has:

(a)      failed to report and pay contributions owed to Plaintiff Laborers' Pension Fund from August 2018 forward, thereby depriving the Laborers' Pension Fund of contributions, income and information needed to administer the Fund and jeopardizing the pension benefits of the participants and beneficiaries;

(b)      failed to report and pay all contributions owed to Plaintiff Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity from August 2018 forward, thereby depriving the Welfare Fund of contributions, income and information needed to administer the Fund and jeopardizing the health and welfare benefits of the participants and beneficiaries;

(c)      failed to report and pay all contributions owed to Laborers' Training Fund from August 2018  forward, thereby depriving the Laborers' Training Fund of contributions, income and information needed to administer the Fund and jeopardizing the training fund benefits of the participants and beneficiaries;

(d)      failed to report and pay all contributions owed to one or more of the other affiliated funds identified above from August 2018 forward, thereby depriving said fund(s) of contributions, income and information needed to administer said fund(s) and jeopardizing the benefits of the participants and beneficiaries;

12.      The Company's failure to submit benefit reports violates Section 515 of ERISA, 29 U.S.C. §1145, and Section 301 of the LMRA. 29 U.S.C. §185.

13.      Pursuant to Section 502(g)(2) of ERISA, 29 U.S.C. §1132 (g)(2), Section 301 of the LMRA, 29 U.S.C. §185, the terms of the Agreement and the Funds' respective Trust Agreements, and federal common law, the Company is liable to the Funds for unpaid contributions, as well as interest and liquidated damages on the unpaid or untimely paid contributions, audit costs, reasonable attorneys' fees and costs, and such other legal and equitable relief as the Court deems appropriate.

WHEREFORE, Plaintiffs respectfully request this Court enter a judgment against River Alliance, Inc.:

a.      ordering the Defendant to submit and pay reports and contributions for the period of August 2018 forward and submit the Company's books and records to an audit upon demand;

b.      entering judgment in sum certain in Plaintiffs' favor and against Defendant on the amounts shown due and owing as pleaded in the Complaint and as revealed by the reports to be submitted, and as revealed by the audit to be conducted including unpaid contributions, interest, liquidated damages, accumulated liquidated damages and interest on late-paid reports; shortages, audit costs, and Plaintiffs' attorneys' fees and costs; and

c.      awarding Plaintiffs any further legal and equitable relief as the Court deems appropriate.

## COUNT II

### (Failure To Submit Union Dues)

14.     Plaintiffs reallege paragraphs 1 through 13 of Count I.

15.     Pursuant to agreement, the Funds have been duly designated to serve as collection agents for the Union in that the Funds have been given the authority to collect from employers union dues which have been or should have been deducted from the wages of covered employees.

16.     Notwithstanding the obligations imposed by the Agreement, the Company has performed covered work for the months of March 2018 forward and has failed to submit and pay dues that were or should have been withheld from the wages of its employees performing covered work for the period of March 2018 forward, thereby depriving the Union of income and information necessary to determine dues submission compliance.

17.     Any dues that are paid late are assessed 10% liquidated damages.

18.     Pursuant to the Agreement, the Company is liable to the Funds for the unpaid union dues, shortages, liquidated damages, audit costs, and reasonable attorneys' fees and costs as the Union's collection agent and such other legal and equitable relief as the Court deems appropriate.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendant River Alliance, Inc.:

a.     ordering the Company to submit and pay reports and dues for the period of March 2018 forward and submit the Company's books and records to an audit upon demand;

b.     entering judgment in sum certain in Plaintiffs' favor and against Defendant on the amounts shown due and owing pursuant to the amounts pleaded in the Complaint, shown as

6

owing from the reports to be submitted and audit to be conducted, including unpaid contributions, interest, liquidated damages, accumulated liquidated damages and on late-paid reports, audit costs, and Plaintiffs' attorneys' fees and costs; and

      c.      awarding Plaintiffs any further legal and equitable relief as the Court deems appropriate.

**COUNT III**

**(Failure To Pay Benefit Contributions Revealed as Delinquent Pursuant to an Audit)**

      19.      Plaintiffs reallege paragraphs 1 through 13 of Count I as though fully set forth herein.

      20.      An audit of the Company's books and records for the time period of April 1, 2014 through June 30, 2017 revealed that the Company performed covered work during the audit period, but that notwithstanding the obligations imposed by the Agreement, and the Funds' respective Agreements and Declarations of Trust, the Company has:

      (a)      failed to report and pay contributions in the amount of $2,314.88 owed to Plaintiff Laborers' Pension Fund for the audit period of April 1, 2014 through June 30, 2017, thereby depriving the Laborers' Pension Fund of contributions, income and information needed to administer the Fund and jeopardizing the pension benefits of the participants and beneficiaries;

      (b)      failed to report and pay contributions in the amount of $2,235.52 owed to Plaintiff Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity for the period of April 1, 2014 through June 30, 2017, thereby depriving the Welfare

7

Fund of contributions, income and information needed to administer the Fund and jeopardizing the health and welfare benefits of the participants and beneficiaries;

(c)     failed to report and pay contributions in the amount of $867.20 owed to Plaintiff Chicago Laborers' District Council Retiree Health and Welfare Fund for the period of April 1, 2014 through June 30, 2017, thereby depriving the Welfare Fund of contributions, income and information needed to administer the Fund and jeopardizing the health and welfare benefits of the participants and beneficiaries;

(d)     failed to report and pay contributions in the amount of $112.00 owed to Laborers' Training Fund for the period of April 1, 2014 through June 30, 2017, thereby depriving the Laborers' Training Fund of contributions, income and information needed to administer the Fund and jeopardizing the training fund benefits of the participants and beneficiaries;

(e)     failed to report and pay contributions in the amount of $12.05 owed to Laborers' District Council Labor Management Committee Cooperative ("LDCLMCC") for the audit period of April 1, 2014 through June 30, 2017, thereby depriving the LDCLMCC of contributions, income and information needed to administer the Fund and jeopardizing the benefits of the participants and beneficiaries;

(f)     failed to report and pay contributions in the amount of $6.80 owed to Chicago Area Independent Construction Association ("CAICA") for the audit period of April 1, 2014 through June 30, 2017, thereby depriving the CAICA of contributions, income and information needed to administer the Fund and jeopardizing the benefits of the participants and beneficiaries; and

8

(g)     failed to report and pay contributions in the amount of $5.95 owed to Laborers'
        Employers' Cooperation and Education Trust ("LECET") for the audit of April 1,
        2014 through June 30, 2017, thereby depriving the LECET of contributions,
        income and information needed to administer the Fund and jeopardizing the
        benefits of the participants and beneficiaries.

A true and accurate copy of the audit and audit summary sheet are attached hereto as Exhibits B
and C respectively.

21.     Under the terms of the Agreement and the Funds' respective Agreements and
Declarations of Trust, the Company owe liquidated damages plus interest on all unpaid
contributions revealed by the audit for the period of April 1, 2014 through June 30, 2017.

22.     Under the terms of the Agreement, the Funds' respective Agreements and
Declarations of Trust, and federal common law, the Company is liable for the costs of any audit
which reveals unpaid contributions. Accordingly, the Company owes the Funds $3,110.28 in
audit costs for the audit for the period of April 1, 2014 through June 30, 2017. *See* Exhibit E.

23.     The Company's actions in failing to submit payment upon the audit to which it
submitted its books and records violates Section 515 of ERISA, 29 U.S.C. §1145.

24.     Pursuant to Section 502(g)(2) of ERISA, 29 U.S.C. §1132 (g)(2), Section 301 of
the LMRA, 29 U.S.C. §185, the terms of the Agreement and the Funds' respective Trust
Agreements, and federal common law, the Company is liable to the Funds for unpaid
contributions, as well as interest, and liquidated damages on the unpaid contributions, audit
costs, and reasonable attorneys' fees and costs, and such other legal and equitable relief as the
Court deems appropriate.

WHEREFORE, Plaintiffs respectfully request this Court enter a judgment against Defendant River Alliance, Inc.:

a.      entering judgment in sum certain in favor of the Funds and against Defendant on the amounts due and owing pursuant to the audit for the period of April 1, 2014 through June 30, 2017, including contributions, interest, liquidated damages, accumulated liquidated damages, audit costs, and Plaintiffs' reasonable attorneys' fees and costs; and

b.      awarding Plaintiffs any further legal and equitable relief as the Court deems appropriate.

COUNT IV

(Failure to Pay Union Dues Revealed as Delinquent Pursuant to an Audit)

25.      Plaintiffs reallege paragraphs 1 through 13 of Count I and paragraphs 15-18 of Count II as though fully set forth herein.

26.      Notwithstanding the obligations imposed by the Agreement, the Company performed covered work during the audit period of April 1, 2014 through June 30, 2017, and the Company failed to withhold and/or submit payment of $223.85 in union dues that were or should have been withheld from the wages of employees for the period of April 1, 2014 through June 30, 2017, thereby depriving the Union of information and income. *See* Exhibits B and C.

27.      Pursuant to the Agreement, the Company owes liquidated damages on all late or unpaid dues as revealed by the audit for the period of April 1, 2014 through June 30, 2017, plus audit costs, interest, accumulated liquidated damages, and reasonable attorneys' fees and costs as the Union's collection agent, and such other legal and equitable relief as the Court deems appropriate.

10

WHEREFORE, Plaintiffs respectfully request this Court enter a judgment against Defendant River Alliance, Inc.:

a.      entering judgment in sum certain in favor of the Funds and against the Company on the amounts due and owing pursuant to the audit for the period of April 1, 2014 through June 30, 2017, including dues, liquidated damages, accumulated liquidated damages, audit costs, and Plaintiffs' reasonable attorneys' fees and costs; and

b.      awarding Plaintiffs any further legal and equitable relief as the Court deems appropriate.

October 19, 2018

Laborers' Pension Fund, et al.

By: /s/ Amy Carollo

Patrick T. Wallace
Amy Carollo
Ryan Liska
Kate Mosenson
Office of Fund Counsel
111 W. Jackson Blvd., Suite 1415
Chicago, IL  60604
(312) 692-1540

11



# CONSTRUCTION & GENERAL LABORERS'
## DISTRICT COUNCIL OF CHICAGO AND VICINITY
### AFFILIATED WITH THE LABORERS' INTERNATIONAL UNION OF NORTH AMERICA
999 McCLINTOCK DRIVE • SUITE 300 • BURR RIDGE, IL 60527 • PHONE: 630/655-8269 • FAX: 630/655-8853

## INDEPENDENT CONSTRUCTION INDUSTRY COLLECTIVE BARGAINING AGREEMENT

It is hereby stipulated and agreed by and between ___River Alliance Inc.___ ("Employer") and the Construction and General Laborers' District Council of Chicago and Vicinity, Laborers' International Union of North America ("Union"), representing and encompassing its affiliated Local Unions, including Local Nos. 1, 2, 4, 5, 6, 25, 75, 76, 96, 118, 149, 152, 225, 269, 288, 582, 681, 1001, 1035, 1092, together with any other Local Unions that may come within its jurisdiction ("Local Unions"), and encompassing the geographic areas of Cook, Lake, DuPage, Will, Grundy, Kendall, Kane, McHenry and Boone counties, Illinois, that:

1. **Recognition.** In response to the Union's request for recognition as the majority or Section 9(a) representative of the unit employee(s), the Employer recognizes the Union as the sole and exclusive collective bargaining representative under Section 9(a) of the NLRA, as amended, for the employees now and hereinafter employed within the terms of this Agreement with respect to wages, hours and other terms and conditions of employment. This recognition is based on the Union's having shown, or having offered to show, evidence of its majority support. The Employer has not assigned its rights for purposes of collective bargaining with the Union to any person, entity or association, and hereby revokes its prior assignment of bargaining rights, if any. The Employer further voluntarily elects not to assign such bargaining rights to any person, entity or association without written approval from the Union. Notwithstanding the number of persons employed under this Agreement, the Employer shall abide by this Agreement, and all extensions hereof, and shall take any right it may have to terminate this agreement based upon the number of persons employed.

2. **Labor Contract.** The Employer affirms and adopts the applicable Collective Bargaining Agreement(s), as designated by the Union, between the Union and the Builders' Association, the Chicago Area Independent Construction Association, the Chicago Area Fox Valley Associated General Contractors Association, the Concrete Contractors Association of Greater Chicago, the Contractors Association of Will and Grundy Counties, the Fox Valley Associated General Contractors, the Midwest Wall and Ceiling Contractors, the Illinois Environmental Contractors Association, the Illinois Road and Transportation Builders Association, the Illinois Small Pavers Association, the Lake County Contractors Association, the Mason Contractors Association of Greater Chicago, the Underground Contractors Association, and all other employers associations with whom the Union or its affiliated Local Unions have an agreement. If the applicable Collective Bargaining Agreement(s) expire during the term of this Agreement, any limitation on the right to strike shall also expire until a successor labor agreement has been established, which shall be incorporated retroactively herein. This Agreement supersedes all necessary terms in the applicable Collective Bargaining Agreement(s).

3. **Total economic increase.** The Employer shall pay its employees a total economic increase of $1.90 per hour effective June 1, 2013; $2.00 per hour effective June 1, 2014; $2.05 per hour effective June 1, 2015; and $2.10 per hour effective June 1, 2016, with amounts to be allocated between wages, fringe benefits and other funds by the Union in its sole discretion. Effective June 1, 2013, the minimum wage rate shall be $37.00 per hour.

4. **Checkoff Deductions and Remittances.** The Employer shall deduct from the wages of employees uniform initiation fees, assessments, membership dues, and working dues in such amounts as the Union shall from time to time establish, and shall remit monthly to the designated Union office the sums so deducted, together with an accurate list showing the employees from whom such dues are deducted, the employees' individual hours, gross wages and deductions as amounts for the monthly period, not later than the tenth (10th) day of the month following the month for which such deductions were made. If the Employer fails to timely remit any amounts to the Union or its affiliated fringe benefit funds that are required under this Agreement, it shall be obligated to the Union for all costs of collection, including attorney fees.

5. **The Employer shall further deduct an amount designated by the Union for each worker that an employee receives wages under the terms of this Agreement as the Laborers' Political League ("LPL") or to a designated committee, and individually allocated voluntary individual deductions (forms and shall pay over the amount so deducted to the Laborers' Political League ("LPL") or to a designated committee, not later than the 10th day of the month all of following the month for which such deductions were made. LPL remittances shall include a separately listed payable to the Laborers' Political League. The Employer shall be paid a percentage rate from each month. There is total amount to be transmitted to the LPL to be calculated at the Illinois Department of Revenue or other applicable standard.

6. **Work Jurisdiction.** This Agreement covers all work within the applicable Collective Bargaining Agreements and all work within the Union's trade and geographic jurisdiction as set forth in the Union's Statement of Jurisdiction, as amended from time to time, which are incorporated by reference into this Agreement. The Employer shall assign all work described therein to the Union-represented Laborer employees and acknowledges the appropriateness of such assignment. Neither the Employer nor its work assignment are required under this Agreement shall be stipulated or otherwise subject to adjustment by any jurisdictional disputes board or mechanism except upon written notice by and direction of the Union.

7. **Subcontracting.** The Employer, whether acting as a contractor, general manager or developer, shall not contract or subcontract any covered work to be done at the site of construction, alteration, painting or repair of a building, structure or other work to any person, corporation or entity not signatory to and covered by a collective bargaining agreement with the Union. This obligation applies to all tiers of subcontractors performing work at the site of construction. The Employer shall further assume the obligations of all tiers of the subcontractors for prompt payment of employees' wages and other benefits required under this Agreement, including reasonable attorneys' fees incurred in enforcing the provisions hereof.

8. **Fringe Benefits.** The Employer agrees to pay the amounts that it is bound to pay under said Collective Bargaining Agreements to the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity, the Laborers' Pension Fund (includes Laborers' Excess Benefit Fund), the Fox Valley Benefit Funds, the Construction and General Laborers' District Council of Chicago and Vicinity Apprentice and Training Trust Fund, the Chicago Area Laborers-Employers Cooperation Education Trust, the LDC/LIUCO, and to all other designated Union-affiliated benefit and labor management trust funds ("Funds"), and to become bound by and be considered a party to the agreements and declarations of trust creating the Funds as if it had signed the original copies of the instruments and amendments thereto. The Employer further affirms that all prior contributions paid to the Welfare, Pension, Training and other Funds were made by duly authorized agents of the Employer at all proper rates, and evidences the Employer's intent to be bound by the trust agreements and Collective Bargaining Agreements in effect when the contributions were made, acknowledging the report form to be a sufficient instrument in writing to bind the Employer to the applicable collective bargaining agreements.

9. **Contract Enforcement.** All grievances filed by either party arising hereunder shall, at the Union's discretion, be submitted to the Chicago District Council Grievance Committee for final and binding disposition in lieu of another grievance committee, provided that deadlocked grievances shall be submitted to final and binding arbitration upon timely demand. Should the Employer fail to comply within ten (10) days with any binding grievance award, whether by grievance committee or arbitration, it shall be liable for all costs and legal fees incurred by the Union to enforce the award. Notwithstanding anything to the contrary, nothing herein shall limit the Union's right to strike or withdraw its members because of non-payment of wages and/or fringe benefit contributions, failure by the Employer to timely remit dues to the Union, or non-compliance with a binding grievance award. The Employer's violation of any provision of this paragraph will give the Union the right to take any other legal and economic action, including but not limited to all remedies. The Employer is expressly understood and agreed that the Union's right to take economic action is in addition to, and not in lieu of, its rights under the grievance procedure. Where necessary to correct contract violations, or where no acceptable schedule is currently employed, the Union may appoint and place a steward from outside the workforce at all job sites.

10. **Successors.** In the event of any change in the ownership, management or operation of the Employer's business or substantially all of its assets, by sale or otherwise, it is agreed that as a condition of such sale or transfer that the new owner or manager, whether corporate or individual, shall be fully bound by the terms and conditions of this Agreement. The Employer shall provide no less than ten (10) days' prior written notice to the Union of the sale or transfer and shall be obligated for all expenses incurred by the Union to enforce the terms of this paragraph.

11. **Termination.** This Agreement shall remain in full force and effect from June 1, 2013 (unless dated differently below) through May 31, 2017, and shall continue thereafter unless there has been given written notice, by certified mail by either party hereto, received not less than sixty (60) days nor more than ninety (90) days prior to the expiration date of the duties to modify or amend this Agreement through negotiations. In the absence of such timely and proper notice the Employer and the Union agree to be bound by the new applicable collective bargaining agreement(s), incorporating the terms into this Agreement and extending this Agreement for the life of the newly negotiated agreements, and thereafter for the duration of successive agreements, unless and until timely notice of termination is given not less than sixty (60) nor more than ninety (90) days prior to the expiration of each successive Collective Bargaining Agreement.

12. **Execution.** The signatory below warrants his or her receipt of the applicable Collective Bargaining Agreement(s) and authorization from the Employer to execute this Agreement, without fraud or duress, and with full knowledge of the obligations and undertakings contained herein. The parties acknowledge and accept facsimile signatures on this Agreement as if they were the original signatures.

Dated: ___July 12___, 20_13_

**ACCEPTED:**

Laborers' Local Union No. ___001 E___

By: _____

**CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY**

By: _____
James P. Connolly, Business Manager

By: _____
Charles LoVerde, Secretary-Treasurer

For Office Use Only: ___CA/CA+___

___River Alliance Inc.___
(Print Name of Firm)

FEIN No. _____
(Print Name of Firm)

___Peter Conghisi III    President___
(Signature)            (Title)

___Peter Conghisi III___
(Print Name)

___1215 W. Irving Pk. Rd.___
(Street Address)

___Itasca    Illinois    60143___
(City, State and Zip Code)

___708-510-5764___
(Telephone)

___River Alliance Concrete@gmail.com___
(Email Address)



EXHIBIT
A